UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3224-BO

| | |
|---|---|
| STUART WAYNE TOMPKINS,<br>     Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R |
| DOC, et al.,<br>     Defendants. | )<br>)<br>) |

On December 30, 2010, Stuart Wayne Tompkins filed this 42 U.S.C. § 1983 action. He originally named approximately 35 defendants. His filing are voluminous. (see docket) As previous noted, Tompkins has filed approximately 10 other cases within this district through the years, many of which are also voluminous. (see, order, D.E. # 35). Thus, Tompkins has substantial knowledge of the legal process required within this district. Now before the court are the following motions filed by plaintiff: Motion for Leave of Court to File an Amended Complaint and Motion to Amend (D.E. # 38), Motion for Leave of Court to Amend (D.E. # 39), Motion for Reconsideration (D.E. # 40), Request Order (D.E. # 42), Motion to Appoint Counsel (D.E. # 51), three Motions for Temporary Restraining Order (D.E. # 64, 75, and 134), two Motions for Default Judgments (D.E. # 94 and 155), four Motions to Stay (D.E. # 106, 116, 118, and 156), Motion for Leave of Court to Amend (D.E. # 133), a Motion to Compel (D.E. # 140), and two additional Motions to Amend (D.E. # 151 and #152). Doctor Davis has filed a motion to dismiss (D.E. # 84) and two motions for protective order (D.E. # 112 and # 138). Defendants' Officer Barber, Connie Bray, Nurse Supervisor Coldsmith, K. Dufault, Officer Hunt, Officer Jones, Kimble, K. Loocklear, Sergeant Mason, Officer Seals, Officer Thompson, and Supervisor Troublefield have also filed a joint motion to dismiss (D.E. # 97). Defendant Medlin has filed a

motion to dismiss which adopts, pursuant to Federal Rule of Civil Procedure Rule 10, the motion found at docket entry 97 (D.E. # 144).

Motion to Amend (D.E. # 38) and Motion for Leave of Court to Amend (D.E. # 133)

The first motion to amend is allowed as of course. Fed. R. Civ. P., Rule 15(a). The second motion, the court finds to be a renewed motion to amend. As the court allowed the first motion to amend (D.E. # 38), the second request is DENIED as MOOT (D.E. # 133). The court further finds that the motion to amend does not change the outcome of the court's prior June 13, 2011, order which dismissed defendants Governor Beverly Perdue, Superintendent J.N. Vaughan, Assistant Superintendent Bill Carroll, Director of Prison Robert C. Lewis, the Secretary of Correction Alvin W. Keller, Jr., Executive Assistant of the Department of Correction Nancy B. Critos, Assistant Superintendent John Doe Hunt, Assistant Superintendent Paul Taylor, Superintendent Sandra Thomas, Superintendent John Doe J. Haynes, Assistant Superintendent Lynn Henry, Director of Support Service John/Jane Doe, and Ex-Director of Prisons Boyd Bennett for lack of personal involvement.

Motion for Leave (D.E. # 39) and Motion for Reconsideration (D.E. # 40)

The motion for leave (D.E. # 39) is a motion to reconsider the court's order of June 13, 2011, which allowed the case to proceed, but dismissed 12 defendants, along with other rulings. The motion for reconsideration (D.E. # 40) seeks the same, specifically this motion seeks reconsideration of the denial of the TRO within the June 13th order. Pursuant to Rule 54(b), in the absence of an express order directing final judgment as to certain claims or parties:

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be

2

> revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b). Under this rule, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-515 (2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)). This is what plaintiff seeks.

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." Id. at 514. The outcome of the motion is "committed to the discretion of the district court." Id. at 515. For guidance of the discretion, courts look to "doctrines such as law of the case," under which a prior dispositive order must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. (quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)).

Courts applying Rule 54(b) have borrowed factors from Rule 59(e) and Rule 60(b), which include (1) evidence not previously available has become available, (2) an intervening change in the controlling law, (3) a clear error of law or manifest injustice, (4) mistake, inadvertence, surprise or excusable neglect, or (5) any other reason justifying relief from the operation of the judgment. See Fayetteville Investors, 936 F.2d at 1469 (noting use by some district courts of reasons set out in Rule 60(b) in deciding motions to reconsider under Rule 54(b)); Superior Bank v. Tandem Nat'l Mortg., 197 F. Supp.2d 298, 332 (D. Md. 2000) (citing and referring to Rule

3

59(e) and Rule 60(b) factors). Tompkins has clearly failed to meet his burden and the motions are DENIED (D.E. # 39 and # 40).

Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) determines whether a claim is stated, not the resolution of factual contests, the merits of a claim, or the applicability of defenses. Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 557).

    a.    Dr. Davis (D.E. # 84)

Plaintiff Tompkins alleges that defendant Davis was deliberately indifferent to his medical needs. (Claim # 6, complaint) Specifically on or about August 18, 2009, plaintiff fell off his top bunk and cut his eye and cracked his left knee cap. (Id.) He was transported to outside medical care, x-rayed, given a leg brace, and prescribed medication. (Id.) At that time, it was

4

plaintiff who asked for the wheelchair, however, the crutches were issued. (Id.) Plaintiff complains about a delay in receiving surgery from August 18, 2009, until September 2, 2009. (Id.) He also alleges that the administration of medication Dr. Allen[1] ordered post-surgery was delayed by one to 3 hours on a daily basis. (Id.) He states Dr. Allen prescribed one medication and Dr. Davis switched that prescription. (Id.) He also states Dr. Allen ordered a wheelchair after the surgery as plaintiff was in a cast, but Dr. Davis prescribed crutches given there was only one wheelchair at Warren Correctional Institution. (Id.) Plaintiff continues that after the cast was removed his leg was swollen, but that Dr. Davis did nothing. (Id.) Tompkins asserts he was given a leg brace, but perhaps not allowed to use the brace upon request, nor did he receive rehabilitative services. (Id.)

Under Iqbal, plaintiff's claim against Dr. Davis is dismissed under the Rule 12(b) motion. Plaintiff has failed to allege that Dr. Davis provided or failed to provide any medical care which was necessary regarding plaintiff's conditions. Deliberate indifference to the serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976) In order to be liable, the official must have actual knowledge or awareness of the need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The indifference must be objectively harmful enough to establish a constitutional violation. See id. at 837–40. Every claim by a prisoner that he or she has received inadequate medical treatment does not state a claim under the Eighth Amendment. Estelle, 429 U.S. at 106. Allegations of mere malpractice or negligence in diagnosis and treatment fail to state a claim for

---

[1]Dr. Allen appears to be the outside medical doctor who performed the surgery.

5

relief under 42 U.S.C. § 1983. Id. at 105-06. Likewise, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances exist." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Tompkins' allegations against Dr. Davis amount to a disagreement over providing crutches, not a wheelchair, and the change in prescription medications. At most this is a disagreement between he and the medical care provider and fails to state a claim. Having GRANTED the motion to dismiss (D.E. # 84), the motions for a protective order are MOOT (D.E. # 112 and 138).

    b.    <u>Victoria Hunt, Gene Barber, Beulah Mason, Nina Seals, Elizabeth Thompson, Connie Jones, Denise Troublefield, K. Dufault, Conie Bray, Minnie Kimble, Cheryl B. Coldwater, and Kathy S. Locklear (D.E. # 97)</u>

Turning to the motion to dismiss filed by Victoria Hunt, Gene Barber, Beulah Mason, Nina Seals, Elizabeth Thompson, Connie Jones, Denise Troublefield, K. Dufault, Conie Bray, Minnie Kimble, Cheryl B. Coldwater, and Kathy S. Locklear, the claims are set out below.[2]

    i.    Claim 1 (shall be reviewed along with Claim 3 and 5)

Plaintiff alleges that he wrote to his sons, aunt, and friends but that defendants Hunt, Barber, and Mason denied him freedom of speech by failing "to send his mail out." (D.E. # 1 at 3, 16) He claims these defendants denied his communication with the Clerk of Court for the

---

[2]The motions to amend found at docket entries 151 and152 were considered in the review and disposition of this motion.

Fourth Circuit Court of Appeals and the Clerks of several United States District Courts. (Id. at 3 & 15) He claims these defendants failed to deliver mail from the courts and his brother. (Id. at 16, 17.) Lastly, he claims defendant Manson was deliberately indifferent to his grievances and "was deficient in managing the Defendant[s] who violated his rights." (Id. at 15)

    ii.  Claim 3 (shall be reviewed along with Claim 1 and 5)

In Claim 3 plaintiff alleges that defendants Seals, Thompson, Jones, Assistant Superintendent Hunt and Taylor, Sandra Thomas, and Troublefield have denied him freedom of speech with his sons, aunt, friends, an attorney, the Governor and Theresa Weathers. (Id. at 23.)

With the exception of Superintendent Hunt, defendants work in the mailrooms of three different correctional units where plaintiff has been housed. Hunt, Barber, and Mason work in the Odom mailroom; Seal, Jones, and Troublefield work in the Lumberton mailroom; and Dufault and Bray work in the Warren mailroom.

    iii.  Claim 5 (shall be reviewed along with Claim 1 and 3)

In Claim 5 plaintiff alleges defendants Dufault and Bray denied him freedom of speech with his sons, friends, United States Court of Appeals, United States Supreme Court, United States Department of Justice Civil Rights Division, United States District Court, "under the Freedom of Information Act with the U.S. Department of Justice, Theresa Weathers Civil Rights Division, U.S. District Attorney's Office in Charlotte, N.C.," and the Superior Court of Beaufort Court. The claims asserts that the denial arises from him not "receiv[ing] any response or any statement of rejection of his mail." (D.E. # 1 at 30)

To begin, a state grievance procedure does not confer a substantive right upon inmates. Thus, the alleged failure of detention officials to properly handle plaintiff's grievance forms does not raise an actionable claim under § 1983. See Daye v. Rubenstein, 417 Fed. App'x 317, *2

(4th Cir. 2011) (unpublished); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Likewise, as pointed out by plaintiff there is evidence that defendant Mason undertook to investigate Tompkins' claims, but found them meritless. Therefore, any claims arising out of his grievances do not state a claim.

As to the freedom of speech aspect of these three claims, plaintiff's allegations are threadbare and conclusory. The allegations contained in plaintiff's pleadings fail to "set forth factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949. Plaintiff alleges he has been denied freedom of speech based on his allegations that he has written to various people and entities, but has not heard back from them. From this the court cannot infer that the mailroom staff or others interfered with plaintiff's mail. Plaintiff argues that he has sent letters and packages, but has received no responses. This is not illustrative of mailroom staff or others infringement on his constitutionally protected right to ths freedom of speech.

Next, plaintiff appears to argues that defendants have mishandled his legal and personal mail. First, plaintiff has a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). Legal mail generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999

F.2d 780, 785-86 (4th Cir. 1993). Further, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the access of court). "[P]rison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998). In order to show actual injury, "a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290-91 (citations omitted).

Plaintiff has failed to show any harm to any legal matters because of the alleged mail incident or incidents regarding his legal mail. Plaintiff only makes a blanket assertion from which this information can be surmised. There is no evidence that plaintiff in fact has had legal mail confiscated, but rather there is evidence that some inmates' mail was misdirected. Certainly there is no indication that any injury has resulted.

Secondly, the court shall review the mail claim in that it relates to personal mail. While prisoners and detainees have some First Amendment rights in both receiving and sending mail, it is clear that prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell v. Wolfish, 441 U.S. 520, 544-52 (1979). ). In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. See Thornburgh, 490 U.S. at 413.

In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly- applied policy, open an inmate's incoming mail. See Wolff v. McDonnell, 418 U.S. 539, 574 -77 (1974); Bumgarner v. Bloodworth, 768 F.2d 297, 301 (8th Cir.1985) (per curiam). Detention officers may also open and read outgoing general mail. Rodriquez v. James, 823 F.2d 8, 11-13 (2nd Cir. 1987); United States v. Felipe, 148 F.3d 101 (2nd Cir. 1998).

Under these standards, the allegations of the non-legal mail issue fail to state a constitutional claim. Plaintiff's allegations do not focus on the policy over mail, but on the mix up or alleged non-delivery of the mail. The incidents appear to have been done inadvertently. Furthermore, plaintiff only theorizes that mail has been interfered with because he received no response. Furthermore, there is no allegation of widespread documented abuse, nor is there specific evidence of an injury.

Furthermore, the court considers liability in a supervisory capacity specifically for Superintendent Hunt. Liability under Section 1983 must be based on more than merely the right to control employees. Polk Co. v. Dodson, 454 U.S. 312, 325–26 (1981); Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Section 1983 liability cannot be premised on mere allegations of respondeat superior. Monell, 436 U.S. at 691; Polk, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. See e.g. Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir.1989), cert. denied, 495 U.S. 932 (1990); Hays v. Jefferson, 668 F.2d 869, 874 (6th Cir.), cert. denied, 459 U.S. 833 (1982). See also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied 469 U.S. 845(1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. See e.g. Leach, 891 F.2d at 1246; Hayes v. Vessey, 777 F.2d 1149, 1154 (6th Cir.1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. Leach, 891 F.2d at 1246. At a minimum, the official must have knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. See e.g. Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir.1992). Additionally, plaintiff must show that defendant had some duty or authority to act. See, e.g., Birrell v. Brown, 867 F.2d 956, 959 (6th Cir.1989) (lower level official not liable for shortcomings of building); Ghandi v. Police Dept. of City of Detroit, 747 F.2d 338, 351 (6th Cir.1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act). Again, supervisory liability claims cannot be based on simple negligence. Leach, 891 F.2d at 1246; Weaver v. Toombs, 756 F.Supp. 335, 337 (W.D. Mich.1989), aff'd 915 F.2d 1574 (6th Cir.1990).

Thus, if plaintiff is attempting to allege supervisory liability this argument fails. Plaintiff fails to allege that any of defendants, specifically Superintendent Hunt, knew of pervasive, widespread abuses by a subordinate such that any subsequent inaction demonstrated conduct that threatened to constitutionally injure plaintiff. Likewise, plaintiff fails to allege or identify any

causal link between some purported supervisory inaction and the infringement of his constitutional rights.

Claims 1, 3 and 5 are DISMISSED.

    iv.    Claim 2

Plaintiff alleges defendant Barber denied him access to the courts when he delayed delivery of a dismissal from the U.S. District Court until June 21, 2009. Plaintiff contends this delay caused him to miss the notice of appeal filing due on or about April 14, 2009. (Id. at 20.) Plaintiff also claims that on April 6, 2009, defendants Manson and Barber denied him access to the courts by causing him to miss a deadline to file a "reply" to a motion for summary judgment, and he lost his case. (Id.)

Federal courts have long recognized inmates have a fundamental right of access to the courts and protect that right "by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents." Lewis v. Casey, 518, U.S. 343, 350 (1996) (emphasis supplied). To sustain a claim of denial of access to the courts, "a prisoner must show actual injury, i.e., that [the] prisoner's efforts to pursue a legal claim were hindered." Id. at 351-52 (1996); accord O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir. 1997) (holding an inmate wishing to establish an unconstitutional burden on his right of access to the courts must show actual injury to the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts). An inmate may not rely on conclusory allegations but instead must identify the specific claim he has been unable to pursue or the specific procedural default arising by reason of official interference. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

As to this claim, plaintiff fails to provide any specifics in identifying the case in which a dismissal was entered. Plaintiff also fails to specify what role Barber allegedly played in the delay of the delivery of the notice. Lastly, plaintiff does not detail what steps he took to perfect an appeal. Furthermore, plaintiff alleges that defendants Barber and Manson caused him to miss a deadline to file a "reply" to a motion for summary judgment. Again, no particulars about the case or the circumstances surrounding the entry of the alleged court's order are set out. Furthermore, the court notes that failure to file a reply to a summary judgment motions would not, in and of itself, result in the dismissal of a case on that basis unless so warned by the governing court. The claim is dismissed as to Barber and Mason.

      v.     Claim 4

In Claim 4 plaintiff contends he has been denied access to the court by deficiencies of the North Carolina Prisoner Legal Services. (Id. at 26.) All of the defendants named in this claim were dismissed during frivolity review. (D.E. 35 at 6) Thus the claim is no longer viable and is dismissed.

      vi.    Claim 6

Plaintiff alleges that on August 18, 2009, he was pushed off the top bunk, fell five feet, and suffered a cut around his left eye and five cracks in his left knee cap. (Id. at 33.) He states that on the same day he was transferred for outside medical care. (Id. at 34.) X-rays and other diagnostic test were done, plaintiff was given a leg brace, and prescribed medication. Plaintiff states his leg was swollen. He also states that an unknown person marked out an order thereby "intentionally interferr [sic] with the treatment that was prescribed. . ." He states he asked for a wheelchair upon his return to the prison which was denied, but instead he was provided with crutches.

13

Defendant Locklear reviewed the doctor's medication orders and did nothing but added "more infliction of pain." (Id. at 35.) Plaintiff claims between August 18 and September 1, 2009, Defendant Locklear delayed his surgery. (Id.) Plaintiff claims Dr. Allen ordered kidney treatment, but as of March 6, 2010, plaintiff had not been "hospitali[zed] for any surgery" consequently Defendant Locklear has been deliberately indifferent to his serious medical need. (Id. at 36.)

On August 24, 2009, plaintiff submitted a sick call request and requested the medication ordered by the doctor, but "Supervisor Locklear . . . Deliberate Indifference to my medical need for pain and swolen leg." (Id. at 37.) Plaintiff identifies Thompson, Kimble and Coldsmith as defendants (Id. at 3, 11), but alleges no facts whatsoever detailing any act or omission on their part.

Under Iqbal, plaintiff's claim against defendant is dismissed under the Rule 12(b) motion. Plaintiff has failed to allege that defendant Locklear, or any other defendant, provided or failed to provide any medical care which was necessary regarding plaintiff's conditions. Deliberate indifference to the serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). In order to be liable, the official must have actual knowledge or awareness of the need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The indifference must be objectively harmful enough to establish a constitutional violation. See id. at 837–40. Every claim by a prisoner that he or she has received inadequate medical treatment does not state a claim under the Eighth Amendment. Estelle, 429 U.S. at 106. Allegations of mere malpractice or negligence in diagnosis and treatment fail to state a claim for relief under 42 U.S.C. § 1983. Id. at 105-06. Likewise, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances exist." Wright v. Collins,

766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

The allegations before the court are nothing more than plaintiff's disagreement with his care as ordered by the medical staff at the prison. In considering the motion to dismiss and this claim of deliberate indifference, the court reviewed, allowed, and considered plaintiff's motion to amend (D.E. # 117). Thus, if the amended complaint is construed to add additional defendants, the amendment fails to state a claim and the additional defendants as well as the entire claim is DISMISSED.

  c. Officer Medlin (D.E. # 144)

Officer Medlin's motion to dismiss adopts, pursuant to Federal Rule of Civil Procedure Rule 10, the motion found at docket entry 97. The motion is allowed and the motion to dismiss is granted for Officer Medlin as set out above.

Motion for Appointment of Counsel (D.E. # 51)

Tompkins is also before the court with a motion for appointment of counsel. The motion for the appointment of counsel is denied. There is no constitutional right to counsel in civil cases. Under the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(1), a court may request an attorney to represent an indigent litigant. However, under the statute, a court cannot force an attorney to accept an appointment. Court intervention to procure representation is typically reserved for cases presenting "exceptional circumstances," determined by examining the claims and the litigant's abilities. Presently, this court finds that no exceptional circumstances exist and the motion (D.E. # 51) is DENIED.

15

Three Motions for Temporary Restraining Order (D.E. # 64, 75, and 134)

Plaintiff has filed additional motions for a preliminary injunction. The motions for preliminary injunctions or temporary restraining orders ("TRO") are again denied. A court may grant a TRO without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). When considering a request for injunctive relief, a court must consider: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir. 2002) (quotation omitted); see N.C. State Ports Auth. v. Dart Containerline Co., 592 F.2d 749, 750 (4th Cir. 1979); Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193–95 (4th Cir. 1977).

A TRO and preliminary injunction are "warranted only in the most extraordinary circumstances." Taylor v. Freeman, 34 F.3d 266, 270 n.2 (4th Cir. 1994). Plaintiff has failed to meet his burden of proof. Therefore, plaintiff's motions for a TRO and a preliminary injunction (D.E. # 64, 75, and 134) are denied.

Motion for Default Judgment (D.E. # 94 and 155)

Plaintiff's motions for default judgment against defendant Coldwater (D.E. # 94) and defendant Medlin (D.E. # 155) are denied. Federal Rule of Civil Procedure 55 provides that an entry of default shall be made when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" as provided by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55(a). Entry of default pursuant to Federal Rule of Civil Procedure

55 is not proper in this case. While defendant Coldwater readily admits the notice of appearance and request for an extension of time were filed one day late, the mistake was inadvertent and quickly reconciled. (D.E. # 90) Clearly Tompkins has suffered no prejudice as to defendant Coldwater. Furthermore, public policy strongly prefers that courts decide cases on the merits. Likewise, defendant Medlin was not in default. (see, D.E. # 157, Response Opposition the Mot. for Default and attach. aff.) Accordingly, the court denies Tompkins' motion for entry of default (D.E. # 94 and 155). See, e.g., Colleton Prep. Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417-21 (4th Cir.2010).

Motions to Stay (D.E. # 106, 116, 118, and 156)

The motions to stay are DENIED as MOOT. The court has resolved all other pending motions in this case and thus need not stay the matter.

Conclusion

 i. The first Motion to Amend is ALLOWED (D.E. # 38) and the second request is DENIED as MOOT (D.E. # 133);

 ii. The Motion for Leave of Court to Amend (D.E. # 39) and the Motion for Reconsideration (D.E. # 40) are DENIED;

 iii. Request Order (D.E. # 42) is DENIED,

 iv. The Motion to Appoint Counsel is DENIED. (D.E. # 51);

 v. The three Motions for Temporary Restraining Order are DENIED (D.E. # 64, 75, and 134);

 vi. The two Motions for Default Judgments are DENIED (D.E. # 94 and 155);

 vii. The four Motions to Stay are DENIED as MOOT (D.E. # 106, 116, 118, and 156);

 viii. The Motion to Compel is DENIED (D.E. # 140);

ix. The three additional Motions to Amend are ALLOWED (D.E. # 117, 151, and #152) and DISMISSED as discussed above;

x. Doctor Davis' Motion to Dismiss is GRANTED (D.E. # 84) as well as his two motions for protective order (D.E. # 112 and # 138);

xi. Defendants' Officer Barber, Connie Bray, Nurse Supervisor Coldsmith, K. Dufault, Officer Hunt, Officer Jones, Kimble, K. Loocklear, Sergeant Mason, Officer Seals, Officer Thompson, and Supervisor Troublefield joint motion to dismiss is GRANTED (D.E. # 97).

xii. Defendant Medlin's motion to dismiss is ALLOWED and GRANTED (D.E. # 144).

Accordingly, the case is DISMISSED in its entirety and the Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 20 day of March 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE